# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| PERCY JOHNSON, | ) |
| Plaintiff, | ) |
| v. | ) Case No.: 2:16-cv-01215-JHE |
| BLOUNT COUNTY, et al., | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER[1]

On July 25, 2016, Plaintiff Percy Johnson ("Johnson" or "Plaintiff") initiated this action, alleging a count for employment discrimination by Defendants on the basis of his age in violation of the Title VII of the Civil Rights Act of 1964 and the Age Discrimination in Employment Act ("ADEA"), a count for constructive discharge from his employment, and a count for violation of his civil rights under 42 U.S.C. 1983. (Doc. 1). Defendants responded with a motion to dismiss portions of Johnson's first count and the entirety of his second and third counts. (Doc. 6). Johnson filed a response in opposition on September 6, 2016. (Doc. 8). Defendants did not file a reply. For the reasons stated more fully below, the motion to dismiss is **GRANTED**.

### I. Standard of Review

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including trial and the entry of final judgment. (Doc. 9).

unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955 (2007)).  Mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" are insufficient.  *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949 (citations and internal quotation marks omitted).  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 557, 127 S. Ct. 1955).  Additionally, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).

Federal Rule of Civil Procedure 12(b)(6) permits dismissal when a complaint fails to state a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949 (citations and internal quotation marks omitted). A complaint states a facially plausible claim for relief "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted).  The complaint must establish "more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 555, 127 S. Ct. at 1965 ("Factual allegations must be enough to raise a right to relief above the speculative level."). Ultimately, this inquiry is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679, 129 S. Ct. at 1950.

The court accepts all factual allegations as true on a motion to dismiss under Rule 12(b)(6). *See, e.g.*, *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000).  However, legal conclusions unsupported by factual allegations are not entitled to that assumption of truth. *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1950.

## II. Factual and Procedural Background[2]

Johnson, now 57, was hired by the Blount County Commission (the "BCC") on March 31, 2010, and last employed by Blount County as a Motor Grader Operator/Heavy Equipment Operator III, grade 8. (Doc. 1 at 4-5). Johnson made $13.48 per hour and was the only employee at his location with this role. (*Id.* at 5). At some point, the BCC hired a 32-year-old named Jeff, for a "Truck Driver" position. (*Id.*). Jeff was not qualified for the Operator III position but nevertheless was placed in it and received the same pay as Johnson. (*Id.*). In December 2015, the BCC hired another younger employer, 32-year-old Colby McAnally, for a "Truck Driver" position; McAnally was also placed in the Operator III position and received higher pay than Johnson. (*Id.* at 5-6). Neither McAnally nor Jeff were hired, paid, or placed through a vote by all the commissioners of the BCC, as required by its policy. (*Id.*).

One of the county commissioners, Carthal Self, told Johnson he was being discriminated against because of his age, as McAnally made more money than Johnson despite having less experience. (*Id.* at 6). Johnson raised this issue with the county commissioners and requested a raise, but, although two commissioners supported Johnson's efforts, Defendants Chris Green (the county commission chair) and Dean Calvert (a county commissioner) told him he could not have a raise. Calvert justified this by stating a raise for Johnson would require an across-the-board raise. (*Id.* at 7). Calvert offered to reclassify Johnson as a mechanic, which would indirectly give Johnson a raise; Johnson would not be required to do the actual work of a mechanic, but would

---

[2] "When considering a motion to dismiss, all facts set forth in the plaintiff's complaint 'are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto.'" *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000) (quoting *GSW, Inc. v. Long Cnty.*, 999 F.2d 1508, 1510 (11th Cir. 1993)). In other words, these "facts" are taken directly from the complaint.

simply get a different title and higher pay.  (*Id.* at 7-8).  Johnson refused, stating it was against policy and unethical.  (*Id.* at 8).  Calvert then denied to Self he had offered Johnson the mechanic title; Self relayed that denial to Johnson.  (*Id.*).  Johnson's complaints about this to the human resources department were met with the statement the "rule book was dead."  (*Id.*).  Johnson suffered "stress, embarrassment, humiliation, shame, high blood pressure, and low self-esteem" and resigned, whereupon he was replaced by a younger employee.  (*Id.*).

### III. Analysis

Defendants have moved for partial dismissal of Johnson's claims.  Specifically, they seek to dismiss any claims using "Jeff" as a comparator, Johnson's claims of constructive discharge, and Johnson's § 1983 claim.

### A. Count I – ADEA Claims Related to "Jeff"

Defendants first move to dismiss Johnson's claims of age discrimination founded on the comparison of himself and Jeff, the employee Johnson alleges was paid the same as him despite being less qualified.  (Doc. 6 at 1).  Defendants state Johnson has failed to make out a prima facie case of discrimination with respect to Jeff because Jeff did not receive a higher wage than Johnson.  (*Id.* at 1-2).  Johnson acknowledges he and Jeff made the same wage but states Jeff was not qualified for that wage.  (Doc. 8 at 5).  He additionally responds he has alleged other facts supporting a claim of age discrimination: that McAnally received a higher wage and that Johnson was replaced by a younger employee after being constructively discharged.  (*Id.* at 5-6).

First, Defendants misstate Johnson's burden at the motion to dismiss stage.  Defendants argue Johnson's claims using Jeff as a comparator fail to establish a prima facie case of age discrimination under the burden-shifting framework of *McDonnell Douglas*.  However, both the Supreme Court and the Eleventh Circuit have expressly refused to treat the evidentiary standard

4

of *McDonnell Douglas* as a pleading standard for an employment discrimination plaintiff's complaint. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 515, 122 S.Ct. 992, 999 (2002) ("[A]n employment discrimination plaintiff need not plead a prima facie case of discrimination . . . to survive [a] motion to dismiss."); *Davis v. Coca–Cola Bottling Co. Consol.*, 516 F.3d 955, 974 (11th Cir. 2008) (Title VII complaint not required to make out *McDonnell Douglas* prima facie case); *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1270–71 (11th Cir. 2004) ("McDonnell Douglas [is] an *evidentiary* rather than a *pleading* standard . . . pleading a McDonnell Douglas prima facie case [is] not necessary to survive a motion to dismiss") (emphasis in original). Johnson's allegations need not rise to the level of a *McDonnell Douglas* prima facie case at this stage of the proceedings.

Although Johnson is not required to allege facts sufficient to make out a prima facie case, the elements of a prima facie case are a useful guide to determining whether his complaint states a claim plausible enough to survive scrutiny under *Iqbal* and *Twombly*. *See Bowers v. Bd. of Regents of Univ. Sys. Of Georgia*, 509 Fed. Appx. 906, 910 (11th Cir. 2013) (elements of prima facie case of Title IX discrimination a guideline for determining whether a plaintiff has stated a claim). In the specific context of age-based wage discrimination, those elements are (1) the plaintiff is a member of the protected age group (i.e., between the ages of 40 and 70); (2) he received low wages; (3) similarly situated persons outside the protected group received higher wages; and (4) he was qualified to receive the higher wages. *MacPherson v. Univ. of Montevallo*, 922 F.2d 766, 774 (11th Cir. 1991).

Examining those elements, Johnson clearly does not state a claim with respect to Jeff because he explicitly admits Jeff was not paid more than him—rather, Johnson was paid the same amount as Jeff. (Doc. 1-1 at 2; doc. 8 at 5). Johnson relies on his superior qualifications to suggest

Jeff did not deserve to make the same wage and ought not have been placed in the same position, but offers no authority to convert this theory into actionable age discrimination.  Johnson does not merely fail to allege facts sufficient to meet the third element of the prima facie case (potentially a permissible omission at this stage), the facts he *does* allege negate that element entirely.  With no adverse employment action at its core, Johnson's ADEA claim is due to be dismissed to the extent it uses Jeff as a comparator.

Johnson also argues he states an age discrimination claim using McAnally as a comparator, as well as by alleging he was replaced by a younger employee after his resignation.  (Doc. 8 at 5-6).  Defendants have explicitly declined to challenge the McAnally claims in their motion to dismiss and make no mention of the claims relating to Johnson's replacement.  (Doc. 6 at 8).  Thus, those claims proceed.

### B. Count II – Constructive Discharge

Defendants offer two arguments for the insufficiency of Johnson's constructive discharge claim: (1) Johnson fails to state a claim because failure to pay equal wages is not a sufficient basis for constructive discharge and (2) even if Johnson does state a claim for constructive discharge, he failed to exhaust his administrative remedies with respect to that claim. (Doc. 6 at 2-3). Johnson counters that constructive discharge is an issue of fact rather than law and, in addition to unequal pay, his constructive discharge resulted from the Defendants' "intentional, deceitful, corrupt, and illegal conduct" and effort to engage him in that conduct to avoid discriminatory pay.  (Doc. 8 at 7-8).  Johnson further states this caused him a variety of emotional and physical harms.  (*Id.* at 8).

"To successfully claim constructive discharge, a plaintiff must demonstrate that working conditions were so intolerable that a reasonable person in [his] position would have been compelled to resign." *Poole v. Country Club of Columbus, Inc.*, 129 F.3d 551, 553 (11th Cir.


1997) (internal quotes and citations omitted). Whether a particular set of conditions amounts to constructive discharge is an issue generally left to the trier of fact. *See Wardwell v. Sch. Bd. of Palm Beach Cty., Fla.*, 786 F.2d 1554, 1557 (11th Cir. 1986). Without more, though, allegations of unequal pay alone are insufficient to establish constructive discharge. *Bourque v. Powell Elec. Mfg. Co.*, 617 F.2d 61, 65 (5th Cir. 1980).[3]

     Johnson's complaint does not identify which facts support which count, but merely alleges the following conditions support his constructive discharge claim: "the Defendant's unlawful discrimination, unlawful payment of lower wages to Johnson, and the Defendant's inability to follow it's [sic] own procedure[.]" (Doc. 1 ¶ 52). The first two of these are clearly just a restatement of Johnson's claim of wage discrimination: he was discriminated against, therefore he received lower wages. Johnson contends in his response the Defendants inviting him to join in their improper classification scheme and refusing to give him a raise without his involvement in the scheme is non-wage-related and argues "[w]hether a reasonable person could tolerate this conduct is a question for the jury and not a question as a matter of law." (Doc. 8 at 8). However, the operative question here is not whether the conditions were intolerable (which would indeed be a question for the jury), but whether the policy violations are separate from the wage claim.

     The complaint includes the following examples of policy violations by Defendants: Johnson asked for a raise pursuant to the Commission's policies on numerous occasions, which required a vote by the four county commissioners, and apparently did not receive one. (Doc. 1 at ¶¶ 21-22). Jeff and McAnally were hired and paid in violation of policy, as neither received a vote

---

[3] The decisions of the former Fifth Circuit handed down before October 1, 1981, are binding in the Eleventh Circuit. Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

by the commissioners and neither was "placed in the minimum wage classification for [his] job." (*Id.* at ¶¶ 23-26, 30).  Dean Calvert told Johnson he could give him the title (but not the responsibilities) of mechanic and thus secure a raise for him that way, a statement Johnson was later told Calvert denied making.  (*Id.* at ¶¶ 38-40).  Finally, Johnson was told by an HR employee that the "rule book was dead."  (*Id.* at 41).

Examining each of these instances, the undersigned cannot see how Johnson alleges conduct separate from his wage discrimination claim.  The Commission's failure to give Johnson a raise pursuant to its policies and subsequent hiring of Jeff and McAnally at the same or higher pay rates in violation of policy are identical to the wage claim.  The only conduct plausibly separate from the wage claim is Calvert's offer of reclassification, which Johnson presumably means when he contends he was expected to engage in criminal activity to receive higher pay.  Even in presenting the argument this is separate from the wage claim, though, Johnson ties it back into the discriminatory discrepancy in pay: "[t]he Plaintiff was not receiving a living wage, *and they hired younger, not qualified individuals at the same rate or higher without following proper protocol,* but placing these employees in the same position/title/grade as the Plaintiff when they were not qualified, *thus defrauding the taxpayers of Blount County*." (Doc. 8 at 8) (emphasis added).  The failure to follow procedures is the source of the age-based unequal pay, which is itself the source of the alleged fraud on the taxpayers.  In other words, the conduct that is supposedly separate from the unequal pay claim is simply the mechanism through which the inequality in pay happened.  Even though Johnson points to the "embarrassment, humiliation, and stress" he suffered, the inquiry into whether he states a claim for constructive discharge sufficient to survive a motion to dismiss is not about his subjective reaction (or even a reasonable person's reaction), but rather

8

about whether he alleges something beyond unequal pay. He does not, and his constructive discharge claim is due to be dismissed.

Because Johnson's complaint is insufficient to state a claim for constructive discharge, the undersigned does not reach Defendants' administrative exhaustion argument.

### C. Count III - § 1983 Claim

Finally, Defendants argue Johnson's § 1983 claim must be dismissed. They note Johnson's § 1983 count does not identify what constitutional right they are alleged to have violated and assume it is a continuation of Johnson's age discrimination claim. (Doc. 6 at 6-8). Defendants argue the ADEA precludes an age discrimination claim under § 1983, and, alternatively, it is a "class of one" equal protection claim and barred because Johnson was a public employee. (*Id.*). Johnson states the law in the Eleventh Circuit is unsettled as to whether § 1983 claims of age discrimination are precluded by the ADEA. (Doc. 8 at 10-11). Johnson argues he also alleged violations of procedural due process by Defendants in failing to follow their policies on raises and in assigning Jeff and McAnally to classifications that did not match the work they performed. (*Id.* at 12).

### 1. ADEA and § 1983

To the extent Johnson's § 1983 claim is premised on age discrimination (and therefore, although Johnson does not directly identify it, the Equal Protection Clause), Defendants point to the Eleventh Circuit's statement "the majority of Circuit Courts to address the issue have ruled that the ADEA precludes the filing of age discrimination claims under Section 1983." *Duva v. Board of Regents*, 654 Fed. Appx. 451, 454 (11th Cir. 2016) (citing *Tapia–Tapia v. Potter*, 322 F.3d 742, 745 (1st Cir. 2003); *Hildebrand v. Allegheny Cnty.*, 757 F.3d 99, 110 (3rd Cir. 2014); *Zombro v. Balt. City Police Dep't*, 868 F.2d 1364, 1369 (4th Cir. 1989); *Lafleur v. Tex. Dep't of*

9

*Health*, 126 F.3d 758, 760 (5th Cir. 1997); *Ahlmeyer v. Nev. Sys. of Higher Educ.*, 555 F.3d 1051, 1057 (9th Cir. 2009); *Migneault v. Peck*, 158 F.3d 1131, 1140 (10th Cir. 1998), *vacated on other grounds by Bd. of Regents of Univ. of N.M. v. Migneault*, 528 U.S. 1110, 120 S.Ct. 928, 145 L.Ed.2d 806 (2000); *Chennareddy v. Bowsher*, 935 F.2d 315, 318 (D.C. Cir. 1991); *but see Levin v. Madigan*, 692 F.3d 607, 617 (7th Cir. 2012) (concluding that the ADEA does not preclude section 1983 equal protection claims)).  In opposition, Johnson points to the Seventh Circuit's decision in *Levin*—the lone circuit court case cited by the Eleventh Circuit as permitting age discrimination claims under § 1983—and a district court case from the Northern District of Iowa, *see Mummelthie v. Mason City, Ia.*, 873 F.Supp. 1293 1316-17 (N.D. Iowa 1995), on which the *Levin* court based its reasoning in part.

Johnson is correct that the Eleventh Circuit has not directly addressed whether an age discrimination claim under § 1983 is foreclosed by the ADEA; the *Duva* court acknowledged the agreement of other circuits, but explicitly declined to decide the issue.  *See* 654 Fed. Appx. at 454 ("because resolution of the preclusion issue is not dispositive in this appeal, we need not decide that issue today").  However, the Eleventh Circuit *has* addressed the closely-related matter of whether the ADEA precludes a federal employee from pursuing a § 1983 age discrimination claim, holding it does.  *See Ray v. Nimmo,* 704 F.2d 1480, 1485 (11th Cir. 1983) (citing *Paterson v. Weinberger*, 644 F.2d 521, 524–25 (5th Cir. 1981)).  Additionally, the vast majority of district courts in the Eleventh Circuit have concluded the ADEA forecloses the possibility of age discrimination suits under § 1983 for all government employees.  *See Committe v. Bd. of Trustees of the Florida State Univ.*, No. 4:15CV228-MW/CAS, 2016 WL 4942044, at *3 (N.D. Fla. Aug. 26, 2016), *report and recommendation adopted sub nom. Bruce Committe v. Bd. of Trustees of the Florida State Univ.*, No. 4:15CV228-MW/CAS, 2016 WL 4942015 (N.D. Fla. Sept. 15, 2016)

(collecting cases). While none of this is dispositive of the issue, it does weigh in favor of preclusion.

Beyond the sheer volume of persuasive authority supporting preclusion, the undersigned is convinced by the reasoning leading to that result. The inference of the congressional intent required for a statutory scheme to implicitly preclude a § 1983 claim may be shown by whether "the remedial devices provided in a particular Act are sufficiently comprehensive." *Middlesex Cty. Sewerage Auth. v. Nat'l Sea Clammers Ass'n*, 453 U.S. 1, 20, 101 S. Ct. 2615, 2626, 69 L. Ed. 2d 435 (1981). In *Zombro v. Baltimore City Police Dep't*, 868 F.2d 1364 (4th Cir. 1989), the leading case supporting preclusion, the Fourth Circuit analyzed the statutory framework of the ADEA to determine if it met this test. Observing the ADEA's mechanisms fit its purpose of facilitating an informal process of mediation by the EEOC, the absence of such a process if § 1983 claims were available, and the lack of evidence of congressional intent to the contrary, the court found it did. *Id.* at 1368.

> The provisions of the ADEA, we thus conclude, evidence congressional intent to foreclose actions for age discrimination under § 1983. To allow such actions would only circumvent the obvious congressional mandate, as well as the detailed procedures of the Act. It is implausible that Congress would have intended to preserve the private cause of action under § 1983 for age discrimination when that cause of action would severely undermine, if not debilitate, the enforcement mechanism created by Congress under the ADEA. Congress, we believe, did not intend to permit plaintiffs to bypass the comprehensive statutory scheme clearly embodied in the language and legislative history of the ADEA merely because they are employed by an agency operating under color of state law.

*Id.* at 1369.

Similarly, the undersigned is skeptical of the rationale adopted by the Seventh Circuit, which concluded § 1983 claims were not precluded by the ADEA notwithstanding its comprehensive nature because Congress was required to (and did not) provide some additional

11

indication of its intent.  *Levin v. Madigan*, 692 F.3d at 619.  The *Levin* court was the first to address the issue after the Supreme Court's decision in *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 129 S.Ct. 788, 172 L.Ed.2d 582 (2009), which held § 1983 claims were not precluded by Title IX.  The *Levin* court concluded *Fitzgerald* required a higher standard of congressional intent—a clear statement in either its legislative history or statutory language—to conclude a § 1983 claim alleging a constitutional violation was preempted, as compared to a § 1983 claim alleging a statutory violation.  *Levin*, 692 F.3d at 619.  However, as the Third Circuit later observed in rejecting *Levin's* reasoning, the statutory-constitutional distinction embraced by *Fitzgerald* does not require anything beyond the comprehensiveness of a statute to infer congressional intent to preclude § 1983 claims.  *Hildebrand v. Allegheny Cty.*, 757 F.3d 99, 108 (3d Cir. 2014) (citing *Fitzgerald*, 555 U.S. at 253).  This makes sense, because the primary concern in allowing § 1983 claims alongside a comprehensive statutory framework is enabling a remedy "inconsistent with Congress's carefully tailored scheme."  *Fitzgerald*, 555 U.S. at 255.  A § 1983 claim bypasses that scheme entirely.  Therefore, the undersigned concludes Johnson's § 1983 claim is precluded by the ADEA insofar as it is based on age discrimination.

As Johnson's § 1983 age discrimination claim is due to be dismissed because it is precluded, it is unnecessary for the undersigned to consider whether that claim is a "class of one" claim barred by *Engquist v. Oregon Dep't of Agr.,* 553 U.S. 591, 128 S. Ct. 2146, 170 L. Ed. 2d 975 (2008).

**2. Procedural Due Process**

In passing, Johnson's response brief alleges his § 1983 claim is predicated in part on procedural due process.  (Doc. 8 at 12).  Even assuming Johnson's procedural due process claim were not simply a restatement of his age-based wage discrimination claim, he has not alleged facts

to support the elements of such a claim and his complaint cannot be plausibly read to have done so.  A § 1983 claim based on procedural due process must assert (1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally inadequate process.  *Grayden v. Rhodes*, 345 F.3d 1225, 1232 (11th Cir. 2003).  On the first element, the United States Constitution secures Johnson no right to procedural due process for his raise unless state law provided him with a legitimate expectation of that raise.  *See Lassiter v. Alabama A&M Univ. Bd. Of Trustees*, 28 F.3d 1146, 1148 (11th Cir. 1994) (en banc), *abrogated on other grounds by Hope v. Pelzer*, 536 U.S. 730 (2002).  It is broadly conceivable the "dead" rule book Johnson references could have created a property interest in a raise, *see Marshall v. City of Cape Coral, Fla.*, 797 F.2d 1555, 1559 (11th Cir. 1986) (personnel rules sufficient to create property interest), but Johnson's complaint points neither to the rule book nor any other source to provide facts establishing such a property interest.  The most Johnson's complaint can fairly be read to argue, even with all reasonable inferences made in his favor, is there is a set of procedures through which an employee may request a raise, (doc. 1 at ¶ 21), after which a vote by the commissioners determines whether the raise is granted, (doc. 1 at ¶ 22).  This is the bare possibility of entitlement to a raise, not its plausibility.  Beyond mere assertion, Johnson presents no discernable procedural due process claim, and this assertion cannot save his § 1983 count.

### IV. Conclusion

Johnson does not state a claim for age discrimination using Jeff as a comparator, nor does he state a constructive discharge claim or a § 1983 claim.  Accordingly, Defendants' motion is **GRANTED** and those claims are **DISMISSED**.

13

DONE this 27th day of March, 2017.

_____
**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE